NATHE BROTHERS, INC., petitioner, Appellant,

v.

AMERICAN NATIONAL FIRE INSURANCE COMPANY, an Ohio company, Respondent.

No. C5–98–2328.

Supreme Court of Minnesota.

Aug. 3, 2000.

Jeffrey S. Sheridan, Aaron T. Stone, Strandemo & Sheridan, P.A., Inver Grove Heights, for appellant.

Charles J. Noel, Jennifer Kjos Fackler, Charles J. Noel & Associates, P.A., St. Paul, for respondent.

Jeffrey J. Lindquist, Pustorino, Tilton & Parrington, P.A., for amicus curiae Insurance Fed. of Minnesota.

Paul A. Sortland, Sortland Law Office, Minneapolis, for amicus curiae Minnesota Trial Lawyers Association.

## OPINION

PAUL H. ANDERSON, Justice.

This matter comes to us on appeal from a district court grant of summary judgment for respondent American National Fire Insurance Company. The Minnesota Court of Appeals affirmed, holding that under the terms of the insurance policy and the Minnesota Standard Fire Insurance Policy, appellant Nathe Brothers, Inc.'s failure to provide a sworn proof of loss within 60 days of American National's request barred it from any recovery under

the policy. We conclude that Nathe Brothers' failure to submit a sworn proof of loss within 60 days does not automatically bar Nathe Brothers from recovery; therefore, we reverse.

Appellant, Nathe Brothers, Inc., a Minnesota corporation, is the owner and operator of the 49 Club, a restaurant and bar in Lino Lakes, Minnesota. On November 6, 1996, Nathe Brothers purchased a policy of property hazard insurance from respondent American National covering the 49 Club facility. On November 16, 1996, a rainstorm caused water and ice accumulations on the flat roof over the banquet hall of the 49 Club which damaged the roof and caused flooding in the banquet hall. Nathe Brothers immediately notified American National of the damages.

On December 4, 1996, American National sent an adjuster to the 49 Club to survey the damage. Sometime shortly after the adjuster surveyed the site, American National cancelled its insurance policy with Nathe Brothers. Approximately 2 weeks later, on December 17, 1996, American National sent a reservation of rights letter to Nathe Brothers.

On December 24, 1996, Nathe Brothers sent a letter to American National inquiring about its claim and attached a damage and repair estimate of $362,700. One month later, on January 22, 1997, American National informed Nathe Brothers that based on certain policy exclusions, coverage would be limited to $10,000.[1] By a letter dated January 30, 1997, American National informed Nathe Brothers that if it did not agree with the $10,000 adjustment, it must execute and return a "Proof of Loss" with supporting documentation within 60 days. American National enclosed its standard proof of loss form with the letter, as well as a check for $8,949.42 ($10,000 less the policy's deductible).

On February 14, 1997, by a letter from its attorney, Nathe Brothers returned American National's check along with the proof of loss form which it had not completed. Nathe Brothers also claims to have attached to the letter another copy of its damage and repair estimate.

By a letter dated February 21, 1997, American National informed Nathe Brothers that the proof of loss had not been properly executed and disputed receiving the damage and repair estimate. In the letter, American National reiterated that a properly executed proof of loss was required for Nathe Brothers to maintain this claim. Nathe Brothers then returned a properly executed proof of loss by a letter dated April 24, 1997. By a letter dated May 30, 1997, American National returned the proof of loss, rejecting it as incomplete and containing obvious errors. Regardless of any errors or omissions in the proof of loss, the parties do not dispute the district court's finding that Nathe Brothers submitted a sworn proof of loss on April 24, 1997, approximately 84 days after American National's initial request.

Following American National's rejection of the proof of loss, Nathe Brothers commenced this action in Anoka County District Court, alleging that American National had breached its insurance policy. In its answer, American National denied many of Nathe Brothers' factual allegations and alleged that it had no liability under the policy because Nathe Brothers had failed to submit its proof of loss within 60 days of American National's request. American National then moved for summary judgment, arguing that Nathe Brothers' suit was barred because it failed to provide the sworn proof of loss within 60 days. The district court agreed with American National, and granted summary judgment in its favor.

Nathe Brothers appealed. The court of appeals held that under American Nation-

---

1. While not relevant to this appeal, the issue of contention between American and Nathe Brothers is whether the roof actually collapsed from accumulations of water and ice, as Nathe Brothers claims, or whether the roof merely sagged, as American claims.

al's policy and Minnesota's Standard Fire Insurance Policy (Minn.Stat. § 65A.01 (1998)), the timely submission of a sworn proof of loss is a condition precedent to recovery, and that Nathe Brothers' failure to do so barred its recovery. *See Nathe Bros., Inc. v. American Nat'l Fire Ins. Co.,* 597 N.W.2d 587, 590–91 (Minn.App. 1999). The court also discussed whether American National had waived this requirement in its communications with Nathe Brothers. *See id.* at 591. After noting that this issue had not been presented to the district court, the court of appeals concluded that Nathe Brothers had not produced sufficient evidence to raise a material issue of fact on the issue of waiver and therefore could not withstand summary judgment on the issue. *See id.*

We accepted review on the sole question of whether the failure to submit a timely proof of loss will operate as a bar to any recovery under either American National's policy or Minnesota's Standard Fire Insurance Policy. In response, American National argues that the plain language of its policy and the modern language of the Standard Fire Insurance Policy, which American National conceded at oral argument are essentially identical, make the requirement that a proof of loss be submitted within 60 days of the insurer's request a condition precedent to recovery by an insured. Nathe Brothers argues that while submission of a proof of loss is a condition of recovery, failure to meet the timeliness requirement will not completely bar recovery.

■■■ This matter involves the interpretation of insurance policy and statutory language, which presents questions of law that we review de novo. *See American Nat'l Property & Cas. Co. v. Loren,* 597 N.W.2d 291, 292 (Minn.1999). General contract principles govern the construction of insurance policies, and insurance policies are interpreted to give effect to the

intent of the parties. *See Dairyland Ins. Co. v. Implement Dealers Ins. Co.,* 294 Minn. 236, 244–45, 199 N.W.2d 806, 811 (1972). Because most insurance policies are presented as preprinted forms, which a potential insured must usually accept or reject as a whole, ambiguities in a policy are generally resolved in favor of the insured. *See Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271, 277 (Minn.1985). However, a statutorily required provision in an insurance policy will not necessarily be construed against the insurer. *See Laidlaw v. Commercial Ins. Co.,* 255 N.W.2d 807, 811 (Minn.1977). Additionally, we have stated that when interpreting an insurance policy, we will avoid an interpretation that will forfeit the rights of the insured under the policy, unless such an intent is manifest in "clear and unambiguous" language. *Sterling State Bank v. Virginia Surety Co.,* 285 Minn. 348, 353–54, 173 N.W.2d 342, 346 (1969); *see also Struble v. Occidental Life Ins. Co.,* 265 Minn. 26, 35, 120 N.W.2d 609, 616 (1963).

Property hazard loss insurance, and in particular the Minnesota Standard Fire Insurance Policy, has an extensive legal history in Minnesota. Both parties have cited to a number of our earlier rulings to support their respective positions regarding our interpretation of the Standard Fire Insurance Policy. Therefore, analysis of this issue requires a careful review of our case law.

Before enactment of the Minnesota Standard Fire Insurance Policy in 1895, two decisions of our court addressed, in a different context, questions similar to those presented here. In *Bowlin v. Hekla Fire Ins. Co.,* we stated "it [was] manifest" that the policy requirement that a proof of loss be submitted 30 days after notice of loss was a "necessary condition precedent to the right of recovery * * *." 36 Minn. 433, 434, 31 N.W. 859, 859 (1887). We also held in *Shapiro* [2] *v. St. Paul Fire & Ma-*

2. We note a discrepancy between the Minnesota Reporter and the Northwestern Reporter

*rine Ins. Co.* that an insured's failure to submit a proof of loss within 60·days of the loss as required by the policy was a bar to recovery absent any waiver by the insurer. 61 Minn. 135, 136, 63 N.W. 614, 614 (1895). Our analysis in these early cases was based on the fact that these policies contained specific policy language that expressly made the timely submission of a proof of loss a condition precedent to recovery. *See Mason v. St. Paul Fire & Marine Ins. Co.,* 82 Minn. 336, 339, 85 N.W. 13, 15 (1901).

In 1895, the Minnesota legislature enacted the Minnesota Standard Fire Insurance Policy. *See generally* Act of Apr. 25, 1895, ch. 175, § 53, 1895 Minn. Laws 420. The Standard Fire Insurance Policy provided a standard form, which contained required terms and conditions for policies of fire insurance. *See id.* The standard form contained a provision requiring that a sworn proof of loss be submitted by the insured to the insurer "forthwith" after the loss. *Id.*[3] We subsequently interpreted the requirement that a proof of loss be provided "forthwith" after the loss to create a condition subsequent to recovery on the policy. *See Mason,* 82 Minn. at 338–40, 85 N.W. at 14–15; *see also Boston Ins. Co. v. A.H. Jacobson Co.,* 226 Minn. 479, 483, 33 N.W.2d 602, 604–05 (1948). In other words, while the proof of loss was a requirement of the policy and must be provided prior to any payment, failure to provide it in a timely manner would not automatically bar any recovery on the policy.

We explained the basis for our conclusion that this is a condition · subsequent when we stated:

> on the spelling of this party's name. The Northwestern Reporter lists the name as "Shapire."

**3.** The specific provision stated:
> In case of any loss or damage under this policy, a statement in writing, signed, and sworn to by the insured, shall be forthwith rendered to the company, setting forth the value of the property insured, except in case of total loss on buildings the value of

[W]hile the provisions prescribing the time within which to give proof of loss are in the form of conditions precedent, they are in reality conditions subsequent affecting rights that have already accrued under the policy and intended not as conditions of liability, but·for evidential purposes in enabling the insurer to determine its liability, and—[w]hen they [insurance policies] contain provisions of forfeiture they must be regarded as penalties defeating a right that has already accrued. Such being the nature of these conditions, it is manifest that the general rules of construction require that they shall be construed with much less strictness than those conditions that operate prior to the loss. *A condition subsequent should never be construed as defeating an already vested right, unless the intention ·of the parties to create a forfeiture is unquestionable.* In accordance with these principles, we find the majority of the courts most unwilling to give such a construction to these. subsequent conditions as will defeat the rights of the insured, unless the facts of the case show fraud or clear injustice to the insurer.

*Boston Ins.,* 226 Minn. at 483, 33 N.W.2d at 605 (quotation omitted) (emphasis added).

In *Boston Ins.,* we relied on our earlier decision in *Mason* where we discussed the nature of the proof of loss requirement and described the requirements for making it a condition precedent for recovery. *Boston Ins.,* 226 Minn. at 482–83, 33 N.W.2d at 604–05. Specifically, in *Mason* we stated

> said buildings need not be stated, the interest of the insured therein, all other insurance thereon, in detail, the purposes for which and the persons by whom the building insured, or containing the property insured, was used, and the time at which and manner in which the fire originated so far as known to the insured.

Act of Apr. 25, 1895, ch. 175, § 53, 1895 Minn. Laws 420.

*[U]nless the policy provides a forfeiture, or makes the service of proofs of loss within the time specified therein a condition precedent to the liability of the company, the time within which such proofs are required to be furnished is not of the essence of the contract.* Where no forfeiture is provided by the terms of the contract, and the service of proofs of loss within the specified time is not made a condition precedent to the liability of the company, the effect of such failure is simply to postpone ·the day of payment. No liability attaches to the company, however, until such proofs are furnished; but unless otherwise provided, expressly or by fair implication, *it is not important that the proofs be not in fact served within the time stated in the policy.*

82 Minn. at 338–39, 85 N.W. at 14 (emphasis added).

Acknowledging our holdings in *Mason* and its progeny, American National goes on to argue that amendments to the Standard Fire Insurance Policy made in 1955 changed the nature of the proof of loss requirement from a condition subsequent to a condition precedent. *See generally* Act of Apr. 18, 1955, ch. 482, § 1, 1955 Minn. Laws 755–56 (codified at Minn.Stat. § 65A.01 (1998)). The two changes that American National asserts are relevant to this appeal are (1) a maintenance of suit clause was added to the 2–year limitation on actions, stating that no action could be maintained on the policy "unless all the requirements of this policy have been complied with," and (2) the timeliness requirement for submission of the proof of loss was changed from "forthwith" to "60 days"

from the date of loss. *Id.;* Minn.Stat. § 65A.01, subd. 3. *See generally* Act of Apr. 25, 1895, ch. 175, § 53, 1895 Minn. Laws 420.

There is one other relevant change to the Standard Fire Insurance Policy that occurred in 1955, but which the parties have not addressed. Prior to the 1955 amendments, the Standard Fire Insurance Policy proof of loss requirement operated as the initial notice of loss to the insurer. The 1955 amendments separated the notice requirement and now require that the insured provide immediate notice of the loss to the insurer. *See* Act of Apr. 18, 1955, ch. 482, § 1, 1955 Minn. Laws 755.[4] The proof of loss, including sworn statements of interest, amount of the loss, and certain factual information, is now required within 60 days of the loss. *See id.*

We have not directly addressed the specific question presented by this appeal in light of the 1955 amendments. However, in *McCullough v. Travelers Cos.,* we addressed the effect of the 1955 amendment's maintenance of suit clause on other policy provisions, specifically the requirement of an "examination under oath." 424 N.W.2d 542, 545 (Minn.1988).

In *McCullough,* we held that under the post–1955 language of the Standard Fire Insurance Policy, the insured's failure to submit to an examination under oath prior to bringing suit on the policy did not require dismissal of the insured's suit. *Id.* at 545. The insured in *McCullough,* because of scheduling conflicts, had been unable to attend the scheduled examination under oath. *Id.* at 543–44. When no examination under oath was rescheduled, the in-

---

4. The new language of the statute as of 1955 is as follows:

In the case of any loss under this policy the insured shall give immediate written notice to this company of any loss, protect the property from further damage, and a statement in writing, signed and sworn to by the insured, shall within 60 days be rendered to the company, setting forth the value of the property insured, except in case of total loss on buildings the value of said buildings need not be stated, the interest of the insured therein, all other insurance thereon, in detail, the purposes for which and the persons by whom the building insured, or containing the property insured, was used, and the time of which and manner in which the fire originated, so far as known to the insured.

Act of Apr. 18, 1955, ch. 482, § 1, 1955 Minn. Laws 755. *See also* Act of Apr. 25, 1895, ch. 175, § 53, 1895 Minn. Laws 420.

sured brought suit on the policy. *See id.* at 544. The district court granted summary judgment for the insurer, and the court of appeals affirmed, both concluding that the maintenance of suit clause made the submission to the examination under oath a condition precedent to suit and that in failing to submit to the examination under oath the insured forfeited all benefits under the policy. *See id.*

We reversed the lower courts, holding that the post-1955 language of the Standard Fire Insurance Policy's maintenance of suit clause did not expressly create a condition precedent and that the requirements of the policy make the examination under oath a condition subsequent to recovery on the policy. *See id.* We stated that the insured would still have to submit to the examination under oath if so requested, but that failure to submit to the examination under oath prior to suit neither prevented his suit nor operated as a complete bar to recovery. *See id.* at 545. Our holding in *McCullough* makes it clear that the addition of the maintenance of suit clause to the Standard Fire Insurance Policy did not make strict compliance with all its terms a condition precedent to recovery.

■ American National also argues that the amendment to the Standard Fire Insurance Policy which requires the proof of loss to be submitted within 60 days of the loss manifests a legislative intent that requires strict compliance with this provision. We disagree. Prior to the 1955 amendments, the Standard Fire Insurance Policy stated that a proof of loss must be submitted "forthwith" after the loss. We have interpreted this requirement to mean that the insured has a reasonable time to submit a proof of loss. *See Mason,* 82 Minn. at 339, 85 N.W. at 15. We also have held that what constitutes a reasonable time is a question of fact. *See id.* Further, we have stated that what constitutes a reasonable time would vary in each case:

> As to what is a reasonable time within which to give notice to an insured de-

pends upon the facts and circumstances of each case. Cases in which the length of time was a week, a month, a year, or more, in and of themselves, are not determinative. Instances might arise where a very short time would be unreasonable; others where a long period of time would be reasonable.

*Farrell v. Nebraska Indem. Co.,* 183 Minn. 65, 67, 235 N.W. 612, 613 (1931). We have also stated generally that when an insured has failed to timely submit a proof of loss, absent express language making the failure to timely submit the proof of loss fatal to the rights of the insured, an insurer must show it was prejudiced to avoid its liability under policy. *See Reliance Ins. Co. v. St. Paul Ins. Cos.,* 307 Minn. 338, 342, 239 N.W.2d 922, 925 (1976).

■ The addition of the 60-day timeliness requirement for the proof of loss in the Standard Fire Insurance Policy affected a significant aspect of fire loss insurance. It eliminated the uncertainty naturally arising from the "forthwith" standard in the original statute. Under the 60-day requirement, there is no factual dispute about what is a reasonable time for the submission of a proof of loss. Both parties know that if the proof of loss is submitted within 60 days, the insurer can raise no claim that the submission was untimely or that the insurer was prejudiced by any delay. After 60 days, if the insurer can show it was prejudiced by the delay, it may seek to limit its liability to the extent of its prejudice and the insured cannot claim its submission was within a reasonable time. In essence, this provision has eliminated the uncertainty we noted in *Farrell.*

Additionally, as we noted earlier, prior to enactment of the 1955 amendment, the proof of loss also operated as initial notice to the insurer of the loss. We recognized the importance of that notice stating that:

> The object, or at least one of the objects, in requiring immediate or forthwith proof of loss, is to give ample opportuni-

ty to the company to investigate into the cause of the fire and the nature and extent of the loss, and make such other investigation and inquiry as a long delay might render futile and fruitless.

*Fletcher v. German–American Ins. Co.*, 79 Minn. 337, 341, 82 N.W. 647, 648 (1900). In *Fletcher*, we observed that a delay in providing the sworn proof of loss did not deprive the insurer of any of the opportunities mentioned above when the insurer had actual and immediate notice of the loss. *Id.* In separating the notice and proof of loss requirements, the legislature was quite clear that notice was now required to be immediate. This immediate notice thus protects the insurer's interests in the manner we describe in *Fletcher*.

As a result of the 1955 amendments, the submission of a sworn proof of loss now more closely resembles the submission to an examination under oath than it does its original notice function. It now operates as an investigative tool available to the insurer to verify facts and compliance with policy conditions. American National's course of conduct with respect to the use of the proof of loss in this case supports this view and by its actions in this matter it essentially admits its liability and is now only contesting the extent of that liability. American National paid the undisputed part of Nathe Brothers' claim without the submission of a proof of loss and only required a proof of loss for the disputed part of the claim.

Further, American National's policy does not require the proof of loss to be submitted within 60 days of the loss, as does the Standard Fire Issuance Policy, but only requires a proof of loss to be submitted 60 days after requested. As in this case, an insurer may choose to pay on a claim without ever requesting a sworn proof of loss, again indicating by its actions that the submission of a sworn proof of loss is not a condition precedent to its liability; rather, it is a condition subsequent to recovery.

In *Mason* and *Boston Ins.*, we discussed what would be required of the legislature to make the proof of loss provision a condition precedent to the Standard Fire Insurance Policy. We stated that there needed to be express language stating that the failure to comply with the timeliness requirement would be "fatal to the rights of the insured, or a condition precedent to the liability of the company." *Mason*, 82 Minn. at 338, 85 N.W. at 14; *see also Hagstrom v. American Fidelity Co.*, 137 Minn. 391, 393, 163 N.W. 670, 671 (1917). The legislature added no such specific language to the Standard Fire Insurance Policy in 1955 or at any time since then.

With regard to the timeliness requirement for an insured's submission of a sworn proof of loss, our holdings in *Mason* and its progeny are unaffected by the 1955 amendments to the Standard Fire Insurance Policy and remain the law in Minnesota. As we stated in *Mason*, "the time within which such proofs are required to be furnished is not of the essence of the contract." 82 Minn. at 338, 85 N.W. at 14.

■■ We therefore conclude that the failure to submit a sworn proof of loss in a timely manner will not necessarily bar recovery on a policy, absent specific policy language stating that failure to timely submit a sworn proof of loss will be fatal to the rights of the insured or that the submission of a sworn proof of loss is a condition precedent to the liability of the insurer. Because the Minnesota Standard Fire Insurance Policy contains no such specific language, nor are such conditions necessarily implied in its terms, the Standard Fire Insurance Policy's requirement that a proof of loss be submitted within 60 days is not a condition precedent to recovery nor does a failure to timely submit a proof of loss effect a forfeiture.

Our analysis here is consistent with our earlier decisions that notice and proof of loss provisions in insurance policies should be construed liberally in favor of the insured "so as not to defeat without a plain necessity [the insured's] claim for the in-

demnity which, in the making of the insurance contract, it was his object to secure." *Sterling,* 285 Minn. at 353–54, 173 N.W.2d at 346 (quoting *Struble,* 265 Minn. at 35, 120 N.W.2d at 616). Our analysis is also in accord with our long-standing judicial policy disfavoring forfeitures in insurance contracts. *See Wait v. Journeymen Barbers' International Union of America,* 210 Minn. 180, 188, 297 N.W. 630, 634 (1941); *see generally* Lee R. Russ, *Couch on Insurance* § 22:35 (3d ed.1995).

We hold that Nathe Brothers' submission of its sworn proof of loss after 60 days does not operate as an automatic bar to recovery on its policy with American National. We reverse the decision of the court of appeals and remand this matter to the district court for further proceedings consistent with this opinion.

Reversed and remanded.